1
2
3
4
5
6
7
8                           UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11  MARK McGOWAN, individually and as          No.  1:15-cv-01365-KJM-SKO
    successor-in-interest to Nancy Joyce
12  Garrett, deceased; DEBORAH BLANCO,
    individually and as successor-in-interest to
13  Nancy Joyce Garrett,                        ORDER

14                  Plaintiffs,

15          v.

16  COUNTY OF KERN, et al.,

17                  Defendants.

18

19

20          Mark McGowan and Deborah Blanco allege their mother, Nancy Garrett, died

21  when Deputy John Clerico's patrol car ran a red light and struck her car at more than eighty miles

22  per hour.  They allege Clerico and Kern County deprived them and Garrett of their rights under

23  the Fourth and Fourteenth Amendments, and they allege the defendants are liable for negligence

24  under California law.  Both Clerico and the County move to dismiss the complaint.  The court

25  held a hearing on October 30, 2015.  Neil Gehlawat appeared for McGowan and Blanco,

26  Kathleen Rivera appeared for the County, and Leslie Dillahunty appeared for Clerico.  For the

27  following reasons, the motions are GRANTED with leave to amend in part.

28

                                          1

1    I.      ALLEGATIONS AND PROCEDURAL HISTORY

2            For purposes of this motion, the following allegations are assumed true.  *See*

3    *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  On September 28, 2014, at about 2 a.m., Ms. Garrett

4    drove into the intersection of China Grade Loop and North Chester Avenue in Bakersfield,

5    California.  Compl. ¶ 19, ECF No. 1-1.[1]  She had a green light, and she presented no danger to

6    herself or anyone else.  *See id.* ¶¶ 19–21.  Deputy Clerico then ran a red light without first "pre-

7    clearing each lane of the intersection," and his patrol car struck her car.  *Id.* ¶¶ 20, 26.  Garrett

8    suffered severe injuries and ultimately died.  *Id.* ¶ 20.  A California Highway Patrol investigation

9    later determined Clerico had been traveling at eighty-five miles per hour just before the impact.

10   *Id.*  He was on duty at the time of the crash.  *See id.*

11           McGowan and Blanco filed a complaint in Kern County Superior Court in July

12   2015, and the case was removed to this court soon afterward.  *See* Not. Removal, ECF No. 1.

13   They allege claims both in their individual capacity and as Garrett's successors in interest.  The

14   complaint includes claims:

15           (1)     Against Clerico under 42 U.S.C. § 1983 for use of excessive force in violation of

16                   the Fourth Amendment, Compl. ¶¶ 25–32 (first claim);

17           (2)     Against Clerico under the same statute for violation of the right to substantive due

18                   process under the Fourteenth Amendment, *id.* ¶¶ 33–41 (second claim);

19           (3)     Under § 1983 for the County's municipal liability, *id.* ¶¶ 42–70 (third, fourth, and

20                   fifth claims); and

21           (4)     Against all the defendants under California law, for negligence and wrongful

22                   death, *id.* ¶¶ 71–76 (sixth claim).

23   The complaint requests compensatory and punitive damages, interest, and attorneys' fees.  *Id.*

24   at 16.

25   _____

26           [1] It appears paragraph nineteen of the complaint contains a typographical error; it alleges
     the accident occurred on September 28, 2015.  Elsewhere the complaint alleges the accident
27   occurred on September 28, 2014, *see* Compl. ¶ 2, and the parties' briefing assumes the earlier
     date is correct, *see, e.g.*, Opp'n Kern Mot. 1, ECF No. 20.
28

On September 10, 2015, both the County and Clerico moved to dismiss, Clerico Mot., ECF No. 7; County Mot., ECF No. 8, and Clerico moved for a more definite statement of the negligence claim, *see* Clerico Mem. 4–5, ECF No. 7-1.  The County also requests judicial notice of a wrongful death claim filed with Kern County in February 2015.  *See* Req. J. Notice (RJN), ECF No. 9.  The court first addresses the request for judicial notice, then turns to the defendants' motions to dismiss and for a more definite statement.

II.     JUDICIAL NOTICE

The County requests the court take judicial notice of a claim McGowan and Blanco filed with the County a few months after the accident.  *See generally* RJN.  In that claim, McGowan and Blanco wrote, "Clerico was allegedly responding to a call at the Longbranch Saloon" when the accident occurred.  *See id.* Ex. A, at 2, ECF No. 9-1.

On a motion to dismiss, the court may take judicial notice of facts outside the complaint without converting the motion into one for summary judgment.  *See, e.g.*, *W. Radio Servs. Co. v. Qwest Corp.*, 678 F.3d 970, 976 (9th Cir. 2012).  "The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  A request for judicial notice must be granted "if a party requests it and the court is supplied with the necessary information."  *Id.* R. 201(c)(2).  As this language implies, the party who requests judicial notice bears the burden to show the matter in question meets the description of Rule 201.  *Newman v. San Joaquin Delta Cmty. Coll. Dist.*, 272 F.R.D. 505, 516 (E.D. Cal. 2011).

The claim here is a public record.  *See* RJN Ex. A, at 1.  Matters of public record are common subjects of judicial notice.  *See, e.g.*, *McVey v. McVey*, 26 F. Supp. 3d 980, 985 (C.D. Cal. 2014).  But the fact that a public document may be subject to judicial notice does not establish the truth of allegations or facts it reports.  *See, e.g.*, *Cactus Corner, LLC v. U.S. Dep't of Agric.*, 346 F. Supp. 2d 1075, 1100 (E.D. Cal. 2004), *aff'd*, 450 F.3d 428 (9th Cir. 2006).  Neither has the County provided the court with the information it needs to find the claim's content is subject to no reasonable dispute; it has made no more than a conclusory attempt to that end.  *See*

3

RJN at 2 (arguing only that "[t]he court may properly consider matters of public record as long as the acts noticed are not subject to reasonable dispute."). The document's meaning is also unclear. It reads, in relevant part,

> At the time of the collision, Clerico was employed as a deputy with the Kern County Sheriff's Office ("KCSO") and was operating his patrol vehicle in the course and scope of his employment with KCSO and the County of Kern. Clerico was allegedly responding to a call at the Longbranch Saloon on North Chester Avenue when this collision occurred.

> Claimants [McGowan and Blanco] contend Clerico was negligent and negligent per se under California law, and that his negligence caused Decedent to suffer serious injuries and ultimately die. Specifically, Claimants contend that Clerico acted in direct violation of KCSO policies and procedures and was therefore negligent and negligent per se as follows: . . .

RJN Ex. A, at 2. This context does not reveal who alleges Clerico was en route to the Saloon— the plaintiffs, the defendants, or someone else. Moreover, assuming the plaintiffs made this allegation, the defendants have cited no authority, and court is aware of none, that holds them to that allegation in this case. The request for judicial notice is denied.

III.    MOTIONS TO DISMISS

    A.    Legal Standard

        A party may move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The motion may be granted only if the complaint lacks a "cognizable legal theory" or if its factual allegations do not support a cognizable legal theory. *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013). The court assumes these factual allegations are true and draws reasonable inferences from them. *Iqbal*, 556 U.S. at 678. A complaint need contain only a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), not "detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). But this rule demands more than unadorned accusations; "sufficient factual matter" must make the claim at least plausible. *Iqbal*, 556 U.S. at 678. In the same vein, conclusory or formulaic recitations of elements do not alone suffice. *Id.* (quoting Twombly, 550 U.S. at 555). Evaluation under Rule 12(b)(6) is a context-specific task drawing on "judicial experience and common sense." *Id.* at 679.

4

B.      Discussion

McGowan and Blanco assert claims under 42 U.S.C. § 1983.  That section provides, in relevant part,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.  A claim under § 1983 includes two elements: "(1) the defendants acted under color of law, and (2) their conduct deprived [the plaintiff] of a constitutional right."  *Stein v. Ryan*, 662 F.3d 1114, 1118 (9th Cir. 2011) (citation and internal quotation marks omitted).  Here, the defendants challenge only the second element, whether McGowan, Blanco, or Garrett were deprived of a constitutional right under the Fourth or Fourteenth Amendment and whether the County can be liable.

1.      First Claim: Fourth Amendment

"The Fourth Amendment safeguards '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'"  *Atwater v. City of Lago Vista*, 532 U.S. 318, 326 (2001) (quoting U.S. Const. am. IV).  In *Brower v. County of Inyo*, the U.S. Supreme Court clarified that to state a claim for violation of the Fourth Amendment right to be free from unreasonable seizures, a plaintiff must allege "an intentional acquisition of physical control."  489 U.S. 593, 595–96 (1989).  In other words, "the detention or taking itself must be willful" because "the Fourth Amendment addresses misuse of power, not the accidental effects of otherwise lawful government conduct."  *Id.* (citation and internal quotation marks omitted).  The Court illustrated its holding by example:

> [I]f a parked and unoccupied police car slips its brake and pins a passerby against a wall, it is likely that a tort has occurred, but not a violation of the Fourth Amendment.  And the situation would not change if the passerby happened, by lucky chance, to be a serial murderer for whom there was an outstanding arrest warrant—even if, at the time he was thus pinned, he was in the process of running away from two pursuing constables.  It is clear, in other words, that a Fourth Amendment seizure does not occur whenever there is a

5

governmentally caused termination of an individual's freedom of movement (the innocent passerby), nor even whenever there is a governmentally caused and governmentally desired termination of an individual's freedom of movement (the fleeing felon), but only when there is a governmental termination of freedom of movement *through means intentionally applied*.

*Id.* at 596–97 (emphasis in original).

In *Brower*, the decedent was allegedly driving a stolen car at high speed to avoid capture by the police. *Id.* at 594. Sheriff's deputies arranged for a truck driver to block both lanes of the highway up ahead. 817 F.2d 540, 542 (9th Cir. 1987), *rev'd*, 489 U.S. 593 (1989). The deputies then parked a patrol car ahead of the trailer and shone the car's lights down the road to blind the decedent as he approached the trailer. *Id.* The decedent then drove past the patrol car, struck the trailer, and died. *Id.* The district court dismissed the complaint's Fourth Amendment claims, and the court of appeals affirmed, finding no seizure had occurred. *Id.* at 546–47. The Supreme Court reversed, finding the deputies had "sought to stop [the decedent] by means of a roadblock and succeeded in doing so"; that is, they had intended to effect a "seizure." 489 U.S. at 599.

In later decisions, the Supreme Court has reaffirmed this rule. In 1998, the Court reiterated that a Fourth Amendment seizure occurs only "when there is a governmental termination of freedom of movement *through means intentionally applied*." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 844 (1998) (quoting *Brower*, 489 U.S. at 596–97) (emphasis in original). In *Lewis*, no seizure occurred when a sheriff's deputy struck and killed an overturned motorcyclist because the evidence showed the accident was just that—an accident. *Id.* (citing *Brower*, 489 U.S. at 597). And in 2007 the Court again adhered to the rule of *Brower* in two opinions. *See Scott v. Harris*, 550 U.S. 372, 381 (2007) (a seizure occurred when the defendant officer attempted to terminate a chase by ramming the pursued car's bumper); *Brendlin v. California*, 551 U.S. 249, 254 (2007) (summarizing *Brower* as holding that a seizure occurs when a restraint is obtained "*through means intentionally applied*" emphasis in original).

The Ninth Circuit has also concluded "intentionality was the focus of the Court's inquiry" in *Brower*. *United States v. Al Nasser*, 555 F.3d 722, 728 (9th Cir. 2009). In *Al Nasser*,

6

1    officers had stopped several other cars in the road.  *Id.* at 724.  It was night, and the defendant, Al

2    Nasser, saw the cars, their lights, and the officers, so he slowed and stopped, but the officers had

3    intended for him to continue.  *Id.*  As it turned out, when an officer spoked to Al Nasser and

4    looked into his window, he saw two smuggled aliens hiding in the car, and Al Nasser was later

5    convicted of knowingly transporting them.  *Id.* at 725.  On appeal he challenged the admission of

6    evidence obtained during the stop as fruits of an unreasonable seizure, but his conviction

7    withstood that challenge because the police never intended for him to stop; therefore no Fourth

8    Amendment seizure had occurred.  *Id.* at 727–32 (citing, *inter alia*, *Brendlin*, 551 U.S. at 254;

9    *Harris*, 550 U.S. at 381; and *Brower*, 489 U.S. at 596).

10           These authorities require dismissal of the complaint's Fourth Amendment claims.

11   The complaint alleges no facts to suggest Clerico intended for his car to strike Garrett or her car,

12   or even to suggest Clerico knew Garrett was in the intersection before their cars collided.

13   Construing the allegations in the light most favorable to the plaintiffs, the obvious explanation for

14   the crash is Clerico's failure to anticipate and avoid striking Garrett's car.

15           The plaintiffs cannot succeed by arguing Clerico "was intentionally traveling at an

16   unreasonably high speed," "intentionally entered the intersection against a red light," and

17   "intentionally failed to pre-clear each lane of the intersection at the time of the collision."  Opp'n

18   Kern Mot. at 4.  If this argument were sufficient, then in *Al Nasser* the defendant could have

19   shown he was seized by pointing out that the officers had intentionally stopped the other cars and

20   intentionally spoken to him and looked into his window.  *See* 555 F.3d at 724–25.

21           The motion to dismiss the Fourth Amendment claim is granted.  To cure the

22   deficiency identified in this order, an amended complaint would need to allege Clerico intended

23   to "stop" Garrett by striking her car with his.  *See, e.g.*, *Brower*, 489 U.S. at 599 ("We think it

24   enough for a seizure that a person be stopped by the very instrumentality set in motion or put in

25   place in order to achieve that result.").  Given the plaintiffs' theory of this case, this course would

26   prove an exercise in futility.  The plaintiffs' request for leave to amend this claim is therefore

27   denied.  *See, e.g.*, *Deveraturda v. Globe Aviation Sec. Servs.*, 454 F.3d 1043, 1049 (9th Cir. 2006)

28   (futility may preclude an amended pleading).

7

2.      Second Claim: Fourteenth Amendment

The complaint alleges deprivations of substantive due process in violation of the Fourteenth Amendment.  The U.S. Supreme Court's opinion in *County of Sacramento v. Lewis* provides "the standard of culpability applicable to substantive due process claims arising from the unintentional killing of an individual by law enforcement officers."  *Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 372 (9th Cir. 1998) (citing *Lewis*, 523 U.S. 833).  Under *Lewis*, "only official conduct that 'shocks the conscience' is cognizable as a due process violation."  *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008).

The Supreme Court has described conscious-shocking conduct as "arbitrary," *Collins v. Harker Heights*, 503 U.S. 115, 126 (1992), "egregious," "deliberate," "unjustifiable by any government interest," *Lewis*, 523 U.S. at 846–49, "brutal," and "offensive," *Breithaupt v. Abram*, 352 U.S. 432, 435 (1957).  Negligent conduct, on the other hand, does not shock the conscience.  *Lewis*, 523 U.S. at 849.  Neither does "conscious disregard."  *See Moreland*, 159 F.3d at 372 (citing *Lewis*, 523 U.S. at 854).  Conduct that falls somewhere between intentional and negligent action, "such as recklessness or gross negligence, is a matter for closer calls."  *Id.* at 849 (citation and quotation marks omitted).  Whether a defendant's conduct shocks the conscience thus turns on the facts of the particular case.  *See, e.g.*, *Moreland*, 159 F.3d at 372.

"Deliberate indifference" may shock the conscience, provided the defendant had a practical opportunity for actual deliberation.  *Lewis*, 523 U.S. at 851.  More specifically, for example, "where officers have ample time to correct their obviously mistaken detention of the wrong individual, but nonetheless fail to do so, the suspect's family members need only plead deliberate indifference to state a claim under the due process right to familial association."  *Porter*, 546 F.3d at 1139.  But if the defendants were forced to take "fast action" in a "quickly evolving and escalating" situation and were forced to make "repeated split-second decisions," a showing of deliberate indifference is essentially impossible as a practical matter.  *See id.* at 1138–40.  In that situation, the court must evaluate whether the defendants acted with a "purpose to harm" the seized person "for reasons unrelated to legitimate law enforcement objectives."  *Id.* at 1137 (emphasis omitted).

1     Here, the defendants argue the complaint must be measured against the heightened

2  "purpose to harm" standard because the accident occurred in the midst of a high-speed chase.

3  Kern Mot at 7; Clerico Mot. at 4.  The court cannot agree; the complaint includes no allegation of

4  a high-speed chase rather only high-speed driving.  Nevertheless, the complaint's allegations do

5  not "nudge[] the[] claims across the line from conceivable to plausible."  *Twombly*, 550 U.S. at

6  570; *Iqbal*, 556 U.S. at 680.

7     The Ninth Circuit recently explained,

8     When faced with two possible explanations, only one of which can
      be true and only one of which results in liability, plaintiffs cannot
9     offer allegations that are merely consistent with their favored
      explanation but are also consistent with the alternative explanation.
10    Something more is needed, such as facts tending to exclude the
      possibility that the alternative explanation is true, in order to render
11    plaintiffs' allegations plausible.

12  *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996–97 (9th Cir. 2014)

13  (quoting *In re Century Aluminum Co. Secs. Litig.*, 729 F.3d 1104 (9th Cir. 2013) (alterations

14  omitted)).  Here, two explanations of the complaint's allegations are possible.  On the one hand,

15  Clerico might have been responding to a rapidly developing emergency that required his

16  immediate presence.  In that instance, true deliberation might not have been practical in the

17  minutes before the crash.  The plaintiffs would then be required to allege Clerico acted with a

18  purpose to harm Garrett, which the complaint does not attempt.  On the other hand, Clerico might

19  have faced no true emergency and so had a practical opportunity to consider slowing for a red

20  light and checking for other traffic.  The plaintiffs could then conceivably state a claim under a

21  theory of deliberate indifference.  But because the complaint includes no allegations "tending to

22  exclude the possibility" that the defendants' explanation is the correct one, the claim must be

23  dismissed.  *Eclectic Props.*, 751 F.3d at 996–97 (citation and quotation marks omitted).

24     Because the complaint could be amended to state a plausible claim, the plaintiffs

25  are granted leave to amend.  *See, e.g.*, *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1039 (9th

26  Cir. 2002) ("[I]n the normal course district courts should freely grant leave to amend when a

27  viable case may be presented.").

28

9

### 3.     Third, Fourth, and Fifth Claims: Municipal Liability

As the complaint states no constitutional claim against Clerico, the County's motion is granted as to the complaint's third, fourth, and fifth claims.  *See, e.g.*, *Whitsitt v. Cent. Towing Transp.*, 457 F. App'x 658, 659 (9th Cir. 2011) (citing *Scott v. Henrich*, 39 F.3d 912, 916 (9th Cir. 1994)).

In some circumstances unlike these, a municipality may be liable under § 1983 even though none of its agents is.  *See Gibson v. Cnty. of Washoe, Nev.*, 290 F.3d 1175, 1186 n.7 (9th Cir. 2002)  "For example, a municipality may be liable if an individual officer is exonerated on the basis of the defense of qualified immunity, because even if an officer is entitled to immunity a constitutional violation might still have occurred.  Or a municipality may be liable even if liability cannot be ascribed to a single individual officer."  *Id.* (citations omitted).  Here, to the extent the plaintiffs seek relief against the County independent of Clerico's alleged violations, the complaint's allegations are insufficient to state a plausible claim for relief.  *See, e.g.*, *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (complaints charging a municipal entity with liability under § 1983 "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively" and "must plausibly suggest an entitlement to relief" (citations and quotation marks omitted)); *see also, e.g.*, *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (discussing municipal liability for "[a] pattern of similar constitutional violations by untrained employees").

The claims for municipal liability are dismissed with leave to amend.

### IV.     MOTION FOR A MORE DEFINITE STATEMENT

Under Federal Rule of Civil Procedure 12(e), "A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response."  Motions under this rule are generally disfavored and rarely granted.  *Castaneda v. Burger King Corp.*, 597 F. Supp. 2d 1035, 1045 (N.D. Cal. 2009) (quotation marks and citations omitted).  A motion for a more definite statement may be granted if the defendant "cannot understand the substance of the claim

10

1    asserted," *Griffin v. Cedar Fair, L.P.*, 817 F. Supp. 2d 1152, 1154 (N.D. Cal. 2011) (quoting

2    *Castaneda*, 596 F. Supp. 2d at 1045), or if the defendant cannot "frame a responsive pleading,"

3    *id.* (quoting *Famolare, Inc. v. Edison Bros. Stores, Inc.*, 525 F. Supp. 940, 949 (E.D. Cal. 1981)).

4    Ordinarily, if discovery would reveal the detail sought, the motion should be denied. *Beery v.*

5    *Hitachi Home Elecs., Inc.*, 157 F.R.D. 477, 480 (C.D. Cal. 1993).

6          Here, Clerico requests a more definite statement with respect to the negligence

7    claim. Clerico Mot. at 5. He argues a more definite statement is necessary because the complaint

8    does not specify whether on the night of the accident he "was responding to a call, was in pursuit,

9    or was for some other reason 'traveling at a high rate of speed,'" and because the complaint

10   includes no detailed allegations about the California Highway Patrol's post-crash investigation.

11   *Id.* To the extent this information is not already in Clerico's possession, it may be elicited by

12   appropriate discovery. The motion is denied.

13   V.    <u>CONCLUSION</u>

14         The request for judicial notice is DENIED. The motions to dismiss are

15   GRANTED. The complaint's first claim is dismissed with prejudice and without leave to amend.

16   The second, third, fourth, and fifth claims are dismissed with leave to amend. The motion for a

17   more definite statement is DENIED. This order resolves ECF Nos. 7, 8, and 9.

18         IT IS SO ORDERED.

19    DATED: January 12, 2016.

20

21                                                   _____

22                                                   UNITED STATES DISTRICT JUDGE

23

24

25

26

27

28

11