1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   MARK MCGOWAN, individually and as           No.  1:15-cv-01365-DAD-SKO
     successor-in-interest to Nancy Joyce
12   Garrett, deceased; DEBORAH BLANCO,
     individually and as successor-in-interest to
13   Nancy Joyce Garrett,                          ORDER GRANTING DEFENDANTS'
                                                   MOTIONS TO DISMISS
14                        Plaintiffs,
                                                   (Doc. Nos. 30 and 32)
15          v.

16   COUNTY OF KERN, a municipality;
     NICHOLAS JOHN CLERICO, an
17   individual; and DOES 1–100,

18                        Defendants.

19

20          On July 14, 2015, plaintiffs Mark McGowan and Deborah Blanco filed the complaint

21   instituting this action in the Kern County Superior Court.  (Doc. No. 1.)  Defendants County of

22   Kern and Deputy Nicholas John Clerico removed the case to federal court on September 3, 2015.

23   (*Id*.)  On January 13, 2016, the previously assigned district judge dismissed plaintiffs' Fourth

24   Amendment claim with prejudice and granted leave to amend with respect to the remaining

25   claims.  (Doc. No. 27.)  On February 3, 2016, plaintiffs filed their first amended complaint.  (Doc.

26   No. 29.)  Therein, plaintiffs allege that their mother, Nancy Garrett, died when Deputy John

27   Clerico's patrol car ran a red light and struck her car at a speed of more than eighty miles per

28   hour.  The first amended complaint includes five claims which may be summarized as follows:

                                                  1

1. Against defendant Clerico under 42 U.S.C. § 1983 for violation of the right to substantive due process under the Fourteenth Amendment, (*id*. at 6–8) (first claim);

2. Against the defendant County under 42 U.S.C. § 1983 for municipal liability, (*id*. at 8–15) (second, third, and fourth, claims); and

3. Against all the defendants under California law, for negligence and wrongful death, (*id*. 15–16) (fifth claim).

The complaint also seeks the award of compensatory and punitive damages, interest, and attorneys' fees. (*Id*. at 17.)

On February 17, 2016, defendants Clerico and the County moved to dismiss the first four claims of plaintiffs' first amended complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) and 12(d). (Doc. Nos. 30 and 32.) On April 19, 2016, plaintiffs filed their opposition to the motions and on April 26, 2016, defendants filed replies. (Doc. Nos. 36-39.) On May 3, 2016, the court heard oral argument. Attorney Neil Gehlawat appeared at the hearing on behalf of plaintiffs and attorneys Kathleen Rivera and Leslie Dillahunty appeared on behalf of defendants. (Doc. No. 40.) For the following reasons, the motions to dismiss will be granted and plaintiffs' first four claims will be dismissed without prejudice but without leave to amend.

FACTUAL ALLEGATIONS

In their first amended complaint plaintiffs allege the following. On September 28, 2014,[1] at approximately 1:40 a.m., Kern County Sheriff's Deputy Nicholas Clerico stopped to assist another deputy on a subject stop at West Day Avenue and North Chester Avenue in Bakersfield, California. (Doc. No. 29, at 5:22–24.) Deputy Clerico was then notified by a third deputy over his radio of a fight at the Long Branch Saloon, located at 907 Chester Avenue in Bakersfield. (*Id*. at 5:24–26.) According to plaintiffs, Deputy Clerico's immediate presence was not required at the Long Branch Saloon. (*Id*. at 7:5–6.) Clerico had been notified that another deputy was already at the scene of the fight and that other deputies were responding to that location as well. (*Id*. at 6:6–10.) Again according to plaintiffs' amended complaint, Deputy Clerico knew he did not

---

[1] The first amended complaint mistakenly states that the tragic incident occurred in both 2014 and 2015. (Doc. No. 29, at 2:4–6 and 5:13.) It appears that 2014 is the correct year.

1   need to respond "Code 3." (*Id*. at 7:2.)  At approximately 1:44 a.m., approximately four minutes

2   after stopping to assist with the subject stop, Deputy Clerico responded to the bar fight call.  (*Id*.

3   at 6:1.)

4       At approximately 1:45 a.m., Ms. Garrett drove into the intersection of China Grade Loop

5   and North Chester Avenue.  (*Id*. at 5:13–16.)  Deputy Clerico, en route to the Long Branch

6   Saloon, ran a red light without first "preclearing each lane of the intersection," and his patrol car

7   struck Ms. Garrett's car.  (*Id.* at 5:17–19 and 7:19–20.)  Ms. Garrett suffered severe injuries and

8   ultimately died.  (*Id*. at 5:20–21.)  A California Highway Patrol investigation later determined that

9   Deputy Clerico's patrol car had been traveling at eighty-five miles per hour .02 seconds before

10  impact.  (*Id*. at 5:19–21)  In the approximately sixty seconds leading up to the collision, Deputy

11  Clerico was not involved in a high-speed chase of a fleeing suspect.  (*Id*. at 6:4–5.)  Deputy

12  Clerico was on duty during the course of these events.  (*See id*. at 3:20–27.*)

13                                LEGAL STANDARD

14      The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal

15  sufficiency of the complaint.  *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir.

16  1983).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of

17  sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901

18  F.2d 696, 699 (9th Cir. 1990).  A plaintiff is required to allege "enough facts to state a claim to

19  relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A

20  claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

21  the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v.

22  Iqbal*, 556 U.S. 662, 678 (2009).

23      In determining whether a complaint states a claim on which relief may be granted, the

24  court accepts as true the allegations in the complaint and construes the allegations in the light

25  most favorable to the plaintiff.  *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Love v.

26  United States*, 915 F.2d 1242, 1245 (9th Cir. 1989).  In general, pro se complaints are held to less

27  stringent standards than formal pleadings drafted by lawyers.  *Haines v. Kerner*, 404 U.S. 519,

28  520-21 (1972).  However, the court need not assume the truth of legal conclusions cast in the

1   form of factual allegations.  *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th

2   Cir. 1986).  While Rule 8(a) does not require detailed factual allegations, "it demands more than

3   an unadorned, the defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678.  A

4   pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the

5   elements of a cause of action."  *Twombly*, 550 U.S. at 555.  *See also Iqbal*, 556 U.S. at 676

6   ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

7   statements, do not suffice.").  Moreover, it is inappropriate to assume that the plaintiff "can prove

8   facts which it has not alleged or that the defendants have violated the . . . laws in ways that have

9   not been alleged."  *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,

10   459 U.S. 519, 526 (1983).

11                                   **DISCUSSION**

12       *1.  Material Beyond the Pleadings*

13           Defendants request that the court consider the declaration of Deputy Don-Paul Keith

14   (Doc. No. 30-2) in ruling on the present motion to dismiss or, in the alternative, that the court

15   treat the motion as one for summary judgment under Rule 56.  (Doc. Nos. 30-1, at 3–6 and 32-1,

16   at 6–7.)  However, in ruling on a motion to dismiss pursuant to Rule 12(b)(6), a court may not

17   "look beyond the plaintiff's complaint" to matters outside the pleadings, unless the court refers to

18   judicially noticeable facts or matters of public record.  *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th

19   Cir. 1995); *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000).  Here, defendants do not

20   request that the court take judicial notice of the Keith declaration, nor do defendants argue that

21   the Keith declaration is a matter of public record.  Accordingly, it is not appropriate for this court

22   to consider the Keith declaration in ruling on defendant's motion to dismiss pursuant to Rule

23   12(b)(6) and the court declines the invitation to do so.

24           As noted, defendants suggest that "as an alternative argument . . . this Court may convert

25   this motion to dismiss to a motion for summary judgment," pursuant to Rule 12(d).  (Doc. No.

26   32-1, at 6:6–7.)  Rule 12(d) provides that if "matters outside the pleadings are presented to and

27   not excluded by the court" in connection with a motion to dismiss pursuant to Rule 12(b)(6), a

28   court may treat the motion "as one for summary judgment under Rule 56" and "[a]ll parties must

4

be given a reasonable opportunity to present all the material that is pertinent to the motion." FED. R. CIV. P. 12(d).  Whether to convent a Rule 12(b)(6) motion into one for summary judgment pursuant to Rule 12(d) when the opposing party has notice that the court may look beyond the pleadings is at the discretion of the district court.  *Hamilton Materials, Inc. v. Dow Chemical Corp.*, 494 F.3d 1203, 1207 (9th Cir. 2007).

Here, conversion of the motion to dismiss to one for summary judgment is also not appropriate.  Consideration of defendant's proffered affidavit would, in the undersigned's view, only be appropriate after plaintiffs have had an opportunity to conduct discovery with respect to their claims.  The court finds that a motion for summary judgment at this stage of the litigation would be premature.  *See, e.g., Burlington N. Santa Fe R. Co. v. Assiniboine & Sioux Tribes of Fort Peck Reservation*, 323 F.3d 767, 773 (9th Cir. 2003) (where summary judgment motion is filed early in the litigation "before a party has had any realistic opportunity to pursue discovery relating to its theory of the case," a district court should "freely" defer or deny such a motion).

For the reasons stated above, the court will not consider material beyond the pleadings in ruling on defendants' Rule 12(b)(6) motions.

*2.  Plaintiffs' First Claim:  Fourteenth Amendment*

In their complaint plaintiffs allege the deprivation of substantive due process in violation of the Fourteenth Amendment.  The Ninth Circuit has recognized:

> The United States Supreme Court [has] considered the standard of culpability applicable to substantive due process claims arising from the unintentional killing of an individual by law enforcement officers.  *See County of Sacramento v. Lewis*, 523 U.S. 833, 118 S. Ct. 1708, 140 L.Ed.2d 1043 (1998).  Noting that the plaintiffs in *Lewis* contended only that the officers had acted in "conscious disregard" of the individual's life, the Supreme Court held this allegation did not rise to the level of culpability necessary to implicate a substantive due process theory of relief.  *Id.* at 1721. Instead, the Court held that "in such circumstances only a purpose to cause harm unrelated to the legitimate object of arrest will satisfy the element of arbitrary conduct shocking to the conscience, necessary for a due process violation."  *Id.* at 1711–12.

*Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 372 (9th Cir. 1998).  Thus, under its decision in *Lewis* "[t]he Supreme Court has made it clear . . . that only official conduct that 'shocks the conscience' is cognizable as a due process violation."  *Porter v. Osborn*, 546 F.3d

5

1131, 1137 (9th Cir. 2008).

The Supreme Court has described such conscious-shocking conduct as that which is "arbitrary," *Collins v. Harker Heights*, 503 U.S. 115, 126 (1992), "egregious," "deliberate," "unjustifiable by any government interest," *Lewis*, 523 U.S. at 846–49, "brutal," and "offensive," *Breithaupt v. Abram*, 352 U.S. 432, 435 (1957). Negligent conduct, on the other hand, does not shock the conscience. *Lewis*, 523 U.S. at 849. Neither does conduct constituting a "conscious disregard." *See Moreland*, 159 F.3d at 372 (citing *Lewis*, 523 U.S. at 854). Conduct that falls somewhere between intentional and negligent action, "such as recklessness or gross negligence, is a matter for closer calls." *Id*. at 849 (citation and quotation marks omitted). Whether a defendant's conduct shocks the conscience thus turns on the facts of the particular case. *See, e.g.,* *Moreland*, 159 F.3d at 372. "Deliberate indifference" may shock the conscience, provided the defendant had a practical opportunity for actual deliberation. *Lewis*, 523 U.S. at 851. More specifically, for example, "where officers have ample time to correct their obviously mistaken detention of the wrong individual, but nonetheless fail to do so, the suspect's family members need only plead deliberate indifference to state a claim under the due process right to familial association." *Porter*, 546 F.3d at 1139. *See also A.D. v. California Highway Patrol,* 712 F.3d 446, 453 (9th Cir. 2013) (citing *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010)). But if the defendant law enforcement officers were forced to take "fast action" in a "quickly evolving and escalating" situation and were required to make "repeated split-second decisions," a showing of deliberate indifference is essentially impossible as a practical matter. *See Porter*, 546 F.3d at 1138–40; *A.D.,* 712 F.3d at 453. In such situations, the court must evaluate whether the defendants acted with a "purpose to harm" and "for reasons unrelated to legitimate law enforcement objectives." *Porter*, 546 F.3d at 1137 (emphasis omitted).[2]

---

[2] Under *Lewis* the "intent to harm standard" has consistently been applied in all situations where law enforcement officers have been deployed in emergency situations. *See Bingue v. Prunncchak,* 512 F.3d 1169, 1177 (9th Cir. 2008); *see also Terrell v. Larson*, 396 F.3d 975, 979 (8th Cir. 2005) (en banc) (and cases cited therein). Indeed, even prior to the decision in *Lewis* federal appellate courts had concluded that officers were not subject to substantive due process liability for alleged reckless or grossly negligent driving in response to emergencies even where a suspect was not being pursued. *Terrell,* 396 F.3d at 979.

1    The district judge previously assigned to this case earlier concluded that plaintiffs'

2    original complaint failed to state a cognizable substantive due process claim, explaining as

3    follows:

> Here, two explanations of the complaint's allegations are possible.
> On the one hand, Clerico might have been responding to a rapidly
> developing emergency that required his immediate presence.   In
> that instance, true deliberation might not have been practical in the
> minutes before the crash.   The plaintiffs would then be required to
> allege Clerico acted with a purpose to harm Garrett, which the
> complaint does not attempt.   On the other hand, Clerico might have
> faced no true emergency and so had a practical opportunity to
> consider slowing for a red light and checking for other traffic.   The
> plaintiffs could then conceivably state a claim under a theory of
> deliberate indifference.   But because the complaint includes no
> allegations "tending to exclude the possibility" that the defendants'
> explanation is the correct one, the claim must be dismissed.
> *Eclectic Props.* [*E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990,
> 996-97 (9th Cir. 2014)] (citation and quotation marks omitted).

12   (Doc. No. 27, at 9:14–23.)

13   To address these concerns, in drafting the first amended complaint plaintiffs' counsel

14   added the following conclusory allegations:  "Clerico was not involved in a high-speed chase of a

15   fleeing suspect."  (Doc. No. 29, at 7:1); "Clerico knew that he did not need to respond 'Code 3' to

16   the call of a fight at the Long Branch Saloon, given that another KCSO deputy was already at the

17   scene and that other KCSO deputies were already on their way to the scene.  His immediate

18   presence was not required at the Long Branch Saloon."  (*Id.* at 7:2–6); "In the approximately

19   sixty seconds [from the call] leading up to the collision, Defendant Clerico did not have to make

20   split-second decisions in a quickly evolving and escalating situation."  (*Id.* at 7:14-16.)

21   It is unclear on what basis plaintiffs have made these new, conclusory allegations.  In any

22   event, these additional allegations still lack specific factual details reflecting whether or not

23   Clerico was responding to a "rapidly developing emergency" which "required his immediate

24   presence" at the Long Branch Saloon.  *See United Healthcare, Inc. v. County of Hennepin*, No.

25   14-CV-114 (JNE/JJK), 2014 WL 6775293, at * 9 (D. Minn. Dec. 2, 2014) ("Plaintiffs'

26   conclusory allegations that Defendants' actions were "intrusive and outlandish" and "conscious

27   shocking" do not pass muster under *Iqbal*.")  Here, plaintiffs' complaint simply contains no

28   specific detail suggesting whether or not the bar fight at the Long Branch Saloon was an

1    emergency, other than the allegation that other officers had been called. There is no factual

2    allegation in the amended complaint suggesting that Deputy Clerico was told he did not need to

3    respond "Code 3" to the bar fight, or that normally officers are told they need to respond "Code

4    3" when there is an emergency and he was not given such an instruction here. Likewise, there are

5    no allegations in the amended complaint suggesting that Clerico was told that the bar fight was

6    not an emergency. These are the type of detailed factual allegations that would support a claim

7    that the deliberate indifference rather than the purpose to harm standard applies here.[3] See *Iqbal*,

8    556 U.S. 678 ("Where a complaint pleads facts that are 'merely consistent with' a defendant's

9    liability, it 'stops short of the line between possibility and plausibility of "entitlement to

10   relief."'"); *see also Mujica v. AirScan Inc*., 771 F.3d 580, 593 (9th Cir. 2014) ("The Supreme

11   Court has stated, however, that plaintiffs must satisfy the pleading requirements of Rule 8 before

12   the discovery stage, not after it.").[4]

13          As the previously assigned district judge noted in dismissing plaintiff's original complaint

14   with leave to amend, the Ninth Circuit recently explained:

15                  When faced with two possible explanations, only one of which can
                    be true and only one of which results in liability, plaintiffs cannot
16                  offer allegations that are merely consistent with their favored
                    explanation but are also consistent with the alternative explanation.
17                  Something more is needed, such as facts tending to exclude the
                    possibility that the alternative explanation is true, in order to render
18                  plaintiffs' allegations plausible.

19   *Eclectic Props. East, LLC*, 751 F.3d at 996-97 (quoting *In re Century Aluminum Co. Secs. Litig.*,

20   729 F.3d 1104 (9th Cir. 2013) (alterations omitted)). Here there remains two possibilities

21   consistent with the complaint's specific, non-conclusory allegations. Either the bar fight was a

22   ───────────────────

23   [3]   *See Burgin v. Leach*, No. 12-CV-0277-CVE-TLW, 2012 WL 5906658, at *1, 5 (N.D. Okla.
     Nov. 26, 2102) (granting motion to dismiss a substantive due process claim where an officer,
24   responding to a non-emergency disturbance call forty-five minutes after the call went out, struck
     plaintiff's vehicle while travelling at a speed of 90 miles per hour thereby causing plaintiff's
25   death because, accepting plaintiff's allegations as true, "police officers routinely drive at speeds
     in excess of the speed limit when responding to calls, and the fact that [the officer] lost control of
26   his vehicle when responding to a call does not remove this case from the realm of ordinary
     negligence.")

27

28   [4]   As discussed at the hearing, in this way the decisions of the Supreme Court in *Iqbal* and
     *Twombly* have significantly impacted pleading practices in the federal courts.

1  "rapidly developing emergency" requiring Deputy Clerico's "immediate presence," or it was not.

2  If the latter, plaintiffs could conceivably state a cognizable claim under a theory of deliberate

3  indifference.  However, because the amended complaint still lacks allegations "tending to exclude

4  the possibility" that the defendants' explanation is the correct one, their claim is subject to

5  dismissal.  *Electic Props. East, LLC*, 751 F.3d at 996–97.

6      *3.  Second, Third, and Fourth Claims: Municipal Liability*

7      Because plaintiffs' amended complaint states no constitutional claim against defendant

8  Deputy Clerico, the County's motion will be granted as to the complaint's second, third, and

9  fourth claims for relief against it.  *See, e.g., Whitsitt v. Cent. Towing Transp.*, 457 F. App'x 658,

10  659 (9th Cir. 2011)[5] (citing *Scott v. Henrich*, 39 F.3d 912, 916 (9th Cir. 1994)).

11      In some circumstances, unlike those presented here, a municipality may be liable under §

12  1983 even though none of its agents is.  *See Gibson v. Cnty. of Washoe, Nev.*, 290 F.3d 1175,

13  1186 n.7 (9th Cir. 2002).  "For example, a municipality may be liable if an individual officer is

14  exonerated on the basis of the defense of qualified immunity, because even if an officer is entitled

15  to immunity a constitutional violation might still have occurred.  Or a municipality may be liable

16  even if liability cannot be ascribed to a single individual officer."  *Id.*  (citations omitted).  Here,

17  to the extent the plaintiffs seek relief against the County on grounds independent of Deputy

18  Clerico's alleged actions, the complaint's allegations are insufficient to state a plausible claim for

19  relief.  *See, e.g., AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012)

20  (complaints charging a municipal entity with liability under § 1983 "may not simply recite the

21  elements of a cause of action, but must contain sufficient allegations of underlying facts to give

22  fair notice and to enable the opposing party to defend itself effectively" and "must plausibly

23  suggest an entitlement to relief" (citations and quotation marks omitted)); *see also, e.g., Connick

24  v. Thompson*, 563 U.S. 51, 62 (2011) (discussing municipal liability for "[a] pattern of similar

25  constitutional violations by untrained employees").

26  /////

27

28  [5]  Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36–3(b).

1    With respect to their claims of municipal liability, plaintiffs in their amended complaint

2    added only allegations of two prior incidents in 2012 of allegedly unsafe driving by Deputy

3    Clerico and general allegations of Kern County Sherriff's Deputies driving unsafely.  *See* Doc.

4    No. 29, at 10:13–11:6 and 13:26–14:9.  Even with these additional allegations, plaintiffs have

5    failed to state a cognizable § 1983 claim for municipal liability against Kern County.

6    Accordingly, plaintiffs' § 1983 claims for municipal liability will also be dismissed.

7                                    **CONCLUSION**

8         For the reasons discussed above,

9    1.  Defendants' motions to dismiss (Doc. Nos. 30 and 32) are granted; and

10   2.  Plaintiffs' first through fourth claims are dismissed without prejudice but without leave to

11       amend.[6]

12   IT IS SO ORDERED.

13   Dated:   __**May 12, 2016**__                    _____

14                                                   UNITED STATES DISTRICT JUDGE

---

[6]  At the hearing on the motion plaintiffs' counsel represented to the court that without discovery he had alleged all relevant and available facts in plaintiffs' first amended complaint.   Therefore, granting further leave to amend at this time would be futile.  However, this order is specifically without prejudice and does not preclude a future motion to amend the complaint based upon factual information uncovered during discovery.