# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK McGOWAN, et al. | Case No. 1:15-cv-01365-DAD-SKO |
| Plaintiffs, | **ORDER DENYING DEFENDANT COUNTY OF KERN'S MOTION TO TERMINATE DEPOSITION OF KERN COUNTY SHERIFF DEPUTY JOHN SWEARENGIN** |
| v. | |
| COUNTY OF KERN, et al., | |
| Defendants. | (Doc. 62) |

## I. INTRODUCTION

On October 27, 2016, Defendant County of Kern (the "County") filed a "Notice of Motion and Motion [] for Order Terminating the Deposition of Kern County Sheriff Deputy John Swearengin" (the "Motion"). (Doc. 62.) On November 16, 2016, Plaintiffs Mark McGowan and Deborah Blanco ("Plaintiffs") filed their opposition (Doc. 68), and the County filed its reply brief on November 23, 2016 (Doc. 70).

After having reviewed the parties' papers, the matter was deemed suitable for decision without oral argument pursuant to Local Rule 230(g), and the Court vacated the hearing set for November 30, 2016. (Doc. 71.) For the reasons set forth below, the County's Motion is DENIED.

## II. BACKGROUND

**A. Factual Background[1]**

On September 28, 2014, at approximately 1:40 a.m., Defendant Kern County Sherriff's Deputy Nicholas Clerico ("Clerico") stopped to assist another deputy on a subject stop at West

---

[1] The factual background summarizes Plaintiffs' allegations as set forth in the First Amended Complaint, which is currently the operative pleading. (Doc. 29.)

Day Avenue and North Chester Avenue in Bakersfield, California. (Doc. 29 at ¶ 23.) Defendant Clerico was then notified by a third deputy over his radio of a fight at the Long Branch Saloon, located at 907 Chester Avenue in Bakersfield. (*Id*.) At 1:44 a.m., approximately four minutes after stopping to assist with the subject stop, Defendant Clerico responded to the bar fight call. (*Id*. at ¶ 24.) According to Plaintiffs, Defendant Clerico had been notified that another deputy was already at the scene of the fight and that other deputies were responding to that location as well, and also knew that he did not need to respond "Code 3."[2] (*Id.* at ¶ 32.)

At approximately 1:45 a.m., Plaintiffs' mother Nancy Garrett lawfully drove into the intersection of China Grade Loop and North Chester Avenue. (*Id.* at ¶ 21.) Defendant Clerico, en route to the Long Branch Saloon, ran a red light without first "pre-clearing each lane of the intersection and without yielding the right of way to oncoming traffic," and his patrol car struck Ms. Garrett's car. (*Id.* at ¶¶ 22, 24, 36.) Ms. Garrett suffered severe injuries and ultimately died. (*Id.* at ¶ 22.) A California Highway Patrol investigation later determined that Defendant Clerico's patrol car had been traveling at eighty-five miles per hour .02 seconds before impact. (*Id.*)

**B.    Procedural Background**

    **1.    Dismissal of Plaintiffs' Federal Claims Without Prejudice**

Plaintiffs filed their initial Complaint in Kern County Superior Court on July 14, 2015. (Doc. 1.) On September 3, 2015, Defendants County of Kern and Nicholas John Clerico ("Deputy Clerico") (collectively "Defendants") removed the case to federal court. *Id.* On January 13, 2016, the Court dismissed Plaintiffs' Fourth Amendment claim with prejudice and granted leave to amend with respect to the remaining claims. (Doc. No. 27.) On February 3, 2016, Plaintiffs filed their First Amended Complaint ("FAC"). (Doc. 29.) The FAC includes five claims: a claim under 42 U.S.C. § 1983 for violation of the right to substantive due process under the Fourteenth Amendment against Defendant Clerico (first claim); claims under 42 U.S.C. § 1983 for municipal liability against the County (second, third, and fourth claims); and a claim under California law for negligence and wrongful death against both Defendants (fifth claim). (*See id.*)

On February 17, 2016, Defendants Clerico and the County moved to dismiss the first four

---

[2] The term "Code 3" refers to driving a patrol car with lights and sirens initiated. (Doc. 62, at 3:18-24.)

2

claims of Plaintiffs' FAC pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(d). (Docs. 30 & 32.) On May 13, 2016, the Court granted Defendants' motion to dismiss and dismissed Plaintiffs' first four claims without prejudice but without leave to amend. (Doc. 41.) In its Order, the Court found that "granting further leave to amend at this time would be futile," in view of Plaintiffs' counsel's representation at the hearing on the motion that "without discovery, he had alleged all relevant and available facts" in the FAC. (Doc. 41 at p. 10 n.6.) However, the Court noted that the Order "is specifically without prejudice and does not preclude a future motion to amend the complaint based upon factual information uncovered during discovery." *Id.*

Currently, the only remaining claim against Defendants is Plaintiffs' state law negligence and wrongful claim (fifth claim). Any motions or stipulations requesting leave to amend the pleadings must be filed no later than February 17, 2017. (Doc. 69.)

**2.  Deposition of Deputy John Swearengin**

On August 24, 2016, Plaintiffs took the deposition of Kern County Sheriff's Deputy John Swearengin ("Swearengin"). Deputy Swearengin, who was not involved in the auto accident at issue in the present case, was involved in a fatal accident in December 2011. (Doc. 29, ¶ 3.) On that date, Deputy Swearengin was responding to an emergency call at high speeds when he collided with two pedestrians, resulting in their death. (Doc. 62, at 2:21-22.) Unlike Defendant Clerico, Deputy Swearengin was not driving while "Code 3" (with lights and sirens) at the time of his accident.

Neil Gehlawat, attorney for Plaintiffs, conducted the questioning of Deputy Swearengin, and Kathleen Rivera of the County Counsel's Office represented Deputy Swearengin for the purposes of his deposition. (*See* Doc. 62-1.) Also present at the deposition were Plaintiffs' counsel Tom Seabaugh, Matt Clark, and David Cohn,[3] and Defendant Clerico's counsel Leslie Dillahunty. According to Plaintiffs, the "primary purpose" of taking the deposition of Deputy

---

[3] According to the County, Attorney Cohn previously questioned Deputy Swearengen at his deposition in a prior civil lawsuit arising out of the December 2011 auto accident referenced above (the "Hiler/Jolley" matter). (Doc. 62, at 2:25-3:2; 3:15-17.)

1  Swearengin was "to gather evidence regarding the municipal liability claims."[4]

2        During the deposition, Plaintiffs' counsel asked Deputy Swearengin the following

3  question: "At that [additional training in approximately May of this year with respect to operating

4  a patrol vehicle], were you trained that when you're going Code 3 that you have to yield the right-

5  of-way if you enter the intersection against a red light?" (Doc. 62-1, at 104:24-105:2.) Counsel

6  for the County objected:

> This line of questioning, these questions, are not calculated, they're not like1y to lead to the discovery of relevant evidence. I will if you have nothing further in terms of topics, I will suspend this deposition, and we will seek a protective order from the court. And my offer of proof in my effort to meet and confer before getting such a protective order is that the training he received in approximately May of 2016 is irrelevant to the Clerico matter. So if you want to proceed, we'll leave, if you have nothing else.

(Doc. 62-1, at 105:3-14.)

      The deposition continued for another ninety (90) minutes, after which the following exchange occurred between counsel:

> MR. GEHLAWAT: Okay. Ms. Rivera, I understand that earlier in the deposition there was a line of questioning that I asked the deputy about with respect to his training in 2016, and your position was that you felt that it was not a proper line of questioning and that your inclination was to terminate the deposition. I don't remember under which rule it is, but
>
> MS. RIVERA: 30(d).
>
> MR. GEHLAWAT: 30(d). Okay. And is that your intention still?
>
> MS. RIVERA: Yes.
>
> MR. GEHLAWAT: Okay. And I -- I don't want this to be confrontational, but I disagree. I think that those questions are relevant to our Monell claims with respect to inadequate training, and we're entitled to discover information as to what training he had before the Hiler/Jolley incident versus what training he's had subsequent to the Hiler/Jolley incident. So I intend to ask those questions, and then if you would like to exercise your right to adjourn the deposition, that's fine; but I just want to give you fair warning that I am going to ask them and whenever you choose to adjourn the deposition

---

[4] On June 22, 2016, following the Court's ruling on Defendants' motion to dismiss, the Court held a telephonic conference with the parties, and thereafter entered a Minute Order "permitt[ing] Plaintiffs to conduct discovery on the issue of municipal liability." (Doc. 54.)

4

>MS. RIVERA: Okay.
>
>MR. GEHLAWAT: you can do that.
>
>MS. RIVERA: I'm not going to instruct him not to answer, so we'll like1y leave after the first question. But I will point out to you -- and maybe it will make you change your mind -- that subsequent remedial measures are inadmissible at trial. So whether there was training in 2016 that widely differed from what the training was before the Clerico matter is irrelevant; it's inadmissíb1e. So I don't-- it doesn't go to your Monel1 claim. But having said that, if you wish to ask your first question, and if it appears to me that you're asking questions about subsequent remedial measures or his understanding, his opinion on policy in 2016, then we'll move to terminate the deposition, and I'll seek a protective order.
>
>MR. GEHLAWAT: I disagree. I think that the policies that he would be trained on with respect to emergency driving at any time following the incident or following being placed on paid administrative leave, up to and including the present, would be relevant within the scope of discovery from Monel1. So I'll ask my question.

(Doc. 62-1, at 141:9-143:7.) When Plaintiffs' counsel asked Deputy Swearengin, "And during that training [in 2016 with respect to operating a patrol vehicle], were you trained that you could enter an intersection against a red light without pre-clearing each lane of the intersection?", the County suspended the deposition and expressed its intent to move for a protective order. (Doc. 62-1, at 143:9-21 ("MS. RIVERA: So with that, I will suspend the deposition. Clearly, you know, you think this is relevant and admissible, and I disagree. So I will move for a protective order, and we'll go from there.").) In total, the deposition of Deputy Swearengin lasted approximately three hours.

### 3. Motion for Order Terminating the Deposition of Deputy Swearengin

On October 27, 2016, over two months after it suspended the deposition of Deputy Swearengin, the County filed the Motion. (Doc. 62.) The parties appeared for an informal discovery dispute conference with the Court On November 4, 2016, regarding Plaintiffs' request to enlarge the number of allowed depositions under Fed. R. Civ. P. 30(a)(2). (Doc. 65.) At that conference, the parties discussed the Motion, including the parties' apparent failure to meet and confer. On November 7, 2016, Court ordered the parties to meet and confer in an effort to agree upon resolution of the Motion. (Doc. 66.) The Order invited the parties, if they still required the Court's assistance after adequately meeting and conferring, to submit to the Court a 2- to 3-page

summary of any remaining dispute pursuant to the Court's informal discovery dispute procedure.

On November 14, 2016, the parties submitted their summaries to the Court, in which they indicated they were unable to resolve the dispute on their own. In its summary, the County expressed its intention to proceed "by noticed motion, rather than the court's informal discovery dispute procedure." Plaintiffs filed their opposition to the Motion on November 16, 2016 (Doc. 68), and the County filed its reply on November 23, 2016 (Doc. 70).

### III.     LEGAL STANDARD

Fed. R. Civ. P. 30(d)(3) allows a party or deponent to move to terminate or limit a deposition. The *only* ground to move to terminate or limit a deposition under Rule 30(d)(3) is if "it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party." Fed. R. Civ. P. 30(d)(3)(A); *Whiting v. Hogan*, No. 12-CV-08039-PHX-GMS, 2013 WL 1047012, at *5 (D. Ariz. Mar. 14, 2013); *Biovail Labs., Inc. v. Anchen Pharm., Inc.*, 233 F.R.D. 648 (C.D. Cal. 2006) (internal citation omitted). The motion may be filed in the court where the action is pending or the deposition is being taken and if the opposing party so demands, the deposition must be suspended for the time necessary to obtain an order. Fed. R. Civ. P. 30(d)(3)(A).[5] The court may then order that the deposition be terminated or limit its scope and manner. *Id*. 30(d)(3)(B). If terminated, the deposition may be resumed only by order of the court where the action is pending. *Id*.

While the issuance of an order terminating a deposition is a matter within the sound discretion of the court, "the power to halt or limit examination is sparingly used." *Smith v.*

---

[5] Although Plaintiffs do not challenge the timeliness of the Motion – made over two months after the suspension of the deposition of Deputy Swearengin – the Court notes that the provisions of Rule 30(d)(3) envision a timely motion for a protective order under such circumstances. *See Holmes v. North Texas Healthcare Laundry Coop. Assoc.*, No. 3:156-CV-2117-L, 2016 WL 2609995 at *3 (N.D. Tex. May 6, 2016) ("Rule 30(d)(3)(A) expressly limits the timing of a motion under Rule 30(d) to be made during a deposition.") (citing *Mashiri v. Ocwen Loan Servicing, LLC*, No. 12cv2838-L (MDD), 2014 WL 4608718, at *2 (S.D. Cal. Sept. 15, 2014)); *Allred v. Maroni Feed Co*., No. 2:14-CV-00405 at *4 (D. Utah Mar. 30, 2015); *McClelland v. Blazin-Wings, Inc.,* 675 F. Supp. 2d 1074, 1082 (D. Colo. 2009) (The motion for protective order should be promptly filed after the deposition is terminated.); *Allred v. Maroni Feed Co*., No. 2:14-CV-00405 at *4 (D. Utah Mar. 30, 2015); *Thomas v. Rockin D Marine Servs*., LLC, No. CIV.A. 12-1315, 2013 WL 2459217, at *3 (E.D. La. June 6, 2013) (observing that "over a month" between the time of initial deposition termination and seeking relief was "clearly in excess of any time 'necessary' for [the party resisting discovery] to consider the outcome of the deposition, compile his arguments, and present a written motion to the Court pursuant to Rule 30(d)(3)."); *F.C.C. v. Mizuho Medy Co.*, 257 F.R.D. 679, 683 (S.D. Cal. 2009) ("FCC should have *immediately* moved for a protective order to comply with Rule 30(d)(3), and continued to carry out its meet and confer efforts to attempt to resolve the dispute.") (emphasis added).

*Logansport Cmty. Sch. Corp.*, 139 F.R.D. 637, 640 (N.D. Ind. 1991) (quoting 4A J. Moore, J. Lucas, MOORE'S FED. PRAC. ¶ 40.61 (2d ed. 1991)). "It is not the embarrassment or annoyance caused by unfavorable answers that is the controlling criterion under 30(d)(3), but 'the *manner* in which the interrogation is conducted that is the basis for refusing to proceed, followed by the required motion to seek relief.'" *Whiting,* 2013 WL 1047012, at *5 (quoting *In re Stratosphere Corp. Sec. Litig.*, 182 F.R.D. 614, 619 (D. Nev. 1998)). "Likewise, the mere fact that more than one irrelevant question is asked, or even that a series of irrelevant questions is asked does not, by itself, constitute annoyance or oppression contemplated by (30)(d)(3). *In re Stratosphere Corp. Sec. Litig.*, 182 F.R.D. at 619.

## IV. ANALYSIS

**A. The County Has Not Shown that Plaintiffs' Deposition of Deputy Swearengin Was Conducted in Bad Faith or in a Manner that Unreasonably Annoyed, Embarrassed, or Oppressed Him.**

The County contends that an order terminating the deposition of Deputy Swearengin under Rule 30(d) is warranted with respect to inquiries regarding his understanding of the current County driving policies because Plaintiffs' counsel "had no good faith basis to believe that Deputy Swearengin's understanding of current driving policies would have any relevance in the instant action to the plaintiff's [sic] anticipated Monell claim of inadequate training."[6] (Doc. 62, at 13:4-9.) In support of its argument, the County points to Deputy Swearengin's testimony that, other than in training, he has not had the use of a patrol vehicle since January 2015 (*see* Doc. 62-1, at 71:6-14) as reason why "his testimony based on current driver's training has no foundation and questions on this topic are not likely to lead to the discovery of relevant evidence." (Doc. 62, 13:8-9.) In its reply brief, the County further asserts that "because Deputy Swearengin had

---

[6] The County also argues that questioning Deputy Swearengin regarding his understanding at the time of his 2011 accident, based on training and County policies relating to "whether a deputy must ask permission before going Code 3, and whether a deputy may exceed the speed limits without activating his lights and sirens," was "conducted in bad faith" because Plaintiffs' counsel were "aware that the driving issues in the Hiler/Jolley matter were not at all the same driving issues in the current litigation." (Doc. 62, 4:24-5:1.) This argument is equally unpersuasive, as the County did not purport to suspend the deposition of Deputy Swearengin as a result of Plaintiffs' questioning regarding Deputy Swearengin's training and policies in 2011. Instead, the reason for the deposition's suspension, as stated on the record, was the County's view that questioning regarding the County's *current* training and policies was irrelevant to the lawsuit (*see* Doc. 62-1, at 105:3-14; 141:9-143: 21), and it is this issue to which Plaintiffs' opposition brief – and the County's reply brief – are directed. (*See* Docs. 68 & 70.)

1  testified that he did not remember further details about his 2016 training, and . . . Deputy
2  Swearengin's understanding of that training with regard to proceedings Code 3 through an
3  intersection was not likely to lead to the discovery of relevant evidence . . . . it was clear that the
4  deposition was no longer being pursued for proper reasons." (Doc. 70, 5:12-16.)

5        The Court finds this argument unpersuasive. The County raised no objection to Plaintiffs'
6  counsel's questions regarding Deputy Swearengin's 2016 training based on harassment or bad
7  faith. Instead, it objected solely on the ground that Plaintiffs' counsel's questions were not
8  relevant to this lawsuit. (*See* Doc. 62-1.) Rule 30(d)(3) states that a party may limit deposition
9  testimony only because the examination is being conducted in bad faith or unreasonably annoys or
10 embarrasses the witness. Fed. R. Civ. P. 30(d)(3)(A). "The relevance of deposition questions 'is
11 an improper ground for a motion under Rule 30(d)(3).'" *NDK Crystal, Inc. v. Nipponkoa Ins. Co.*,
12 No. 10 CV 1824, 2011 WL 43093, at *3 (N.D. Ill. Jan. 4, 2011); (quoting *Medline Inds. v. Lizzo*,
13 No. 08 C 5867, 2009 WL 3242299, at *2 (N.D. Ill. Oct.6, 2009)); *see also Whiting*, 2013 WL
14 1047012, at *6; I*n re Stratosphere Corp. Sec. Litig.*, 182 F.R.D. at 619; *Int'l Union of Elec., Radio*
15 *and Mack Workers, AFL-CIO v. Westinghouse Elec. Corp.*, 91 F.R.D. 277, 279 (D.D.C. 1981).

16       Nothing in the deposition transcript supports a finding that Plaintiffs' counsel met the level
17 of abusive conduct required under Rule 30(d)(3)(A): "bad faith or [conduct] that unreasonably
18 annoys, embarrasses, or oppresses the deponent or party." Fed. R. Civ. P. 30(d)(3)(A). After the
19 County posed its relevance objection to Plaintiffs' counsel's questioning of Deputy Swearengin
20 regarding his 2016 training, Plaintiffs' counsel responded: "I don't want this to be confrontational,
21 but I disagree. I think that those questions are relevant to our Monell claims with respect to
22 inadequate training, and we're entitled to discover information as to what training he had before
23 the Hiler/Jolley incident versus what training he's had subsequent to the Hiler/Jolley incident. So
24 I intend to ask those questions, and then if you would like to exercise your right to adjourn the
25 deposition, that's fine; but I just want to give you fair warning that I am going to ask them and
26 whenever you choose to adjourn the deposition . . . you can do that." (Doc. 62-1, at 141:22-
27 142:10.) The deposition continued for almost ninety more minutes without incident, at which
28 point Plaintiffs' counsel revisited the topic of Deputy Swearengin's 2016 training. Plaintiffs'

counsel's question that prompted the County to suspend the deposition ("And during that training, were you trained that you could enter an intersection against a red light without pre-clearing each lane of the intersection?") did not bear any indication of harassment or bad faith.  Again, the County's sole objection to Plaintiffs' counsel's questions regarding Deputy Swearengin's 2016 training was limited to relevance, and Plaintiffs' counsel did not threaten the witness, did not encourage him to disregard his counsel's instructions, or engage in any behavior that the Court finds to be abusive.  *Cf. United States ex rel. Baltazar v. Warden*, 302 F.R.D. 256, 258 (N.D. Ill. 2014) (granting the plaintiff's motion for a protective order under Rule 30(d) where defendant's deposition questions were improper, irrelevant, utterly distasteful, and disrespectful, where the tone of the deposition was hostile and confrontational from the beginning, and where the intent of the questioning was to accuse the plaintiff of lying despite knowledge to the contrary.).  The Court therefore finds no basis for granting the Motion, and it shall be denied.

**B.     Plaintiffs Shall Be Permitted to Depose Deputy Swearengin for an Additional Thirty (30) Minutes Regarding His 2016 Training Relating to Driving a Patrol Car With Lights and Sirens Initiated ("Code 3").**

This does not mean, however, that the County's relevancy objection was necessarily misplaced.  The scope of discovery is governed by Rule 26, which allows "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." Fed. R. Civ. P. 26(b)(1).  Relevance is construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that bears on, any issue that is or may be in the case.  *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (internal citation omitted).  *See also Whiting*, 2013 WL 1047012, at *1-2.  "Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).  Discovery must be limited, however, if:

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C).

Plaintiffs argue that "the fact that Deputy Swearengin received training after the Clerico wreck is highly significant from the standpoint of what differences there may be between the current training and the training before the Clerico wreck" and that Plaintiffs "intend to discover whether the deputies' current understanding of the written policy differs from the text of the written policy."[7] (Doc. 68, 7:12-13; 10:16-18.) While Plaintiffs' identified remaining area of inquiry, namely Deputy Swearengin's 2016 training, is within the scope of discovery, such area shall be restricted pursuant to Rule 26(b)(2)(C) to training pertaining to driving a patrol car with lights and sirens initiated ("Code 3"), as is at issue in the current litigation. Further, while it was undoubtedly improper for the County to instruct Deputy Swearengin not to answer questions about his current understanding of County policies on the basis that such testimony is "improper opinion from a lay witness,"[8] *see In re Stratosphere Corp. Sec. Litig.,* 182 F.R.D. at 619, the Court cautions Plaintiffs that municipal liability predicated on inadequate training is based on the substance of the training, not the on the trainee's understanding of the training. *See, e.g., Connick v. Thompson*, 563 U.S. 51, 68 (2011) ("[F]ailure-to-train liability is concerned with the substance of the training . . . . The statute does not provide plaintiffs or courts carte blanche to micromanage local governments throughout the United States.")

In view of the liberal discovery standard under Rule 26(b)(1), but with the above-mentioned limitation and warning, the Court will allow Plaintiffs to continue Deputy Swearengin's deposition for an additional 30 minutes so that Plaintiffs may ask their "limited number of questions" relating to Deputy Swearengin's training in 2016 relating to the driving of a patrol car while "Code 3." (Doc. 68, at 11:5-7; *see also id.* at 2:28-3:1.)

//

---

[7] The County counters, correctly, that it is at a "curious disadvantage" of being subject to criticism by Plaintiffs of "misstat[ing] Plaintiffs' municipal liability claims" when such claims are not part of the case, having been dismissed without prejudice but without leave to amend. (Doc. 70, 2:14-23.) The County (and the Court, for that matter) is therefore left to speculate as to the precise nature of Plaintiffs' yet-unpled municipal liability claims.

[8] The County also instructed Deputy Swearengin not to answer questions based on the "federal deliberative process privilege." While presumptively a proper ground on which to instruct a deponent not to answer under Fed. R. Civ. P. 30(c)(2), the application of the privilege is not before the Court, and the Court therefore takes no position as to the propriety of the instruction.

### V.  CONCLUSION

For the foregoing reasons, Defendant County of Kern's Motion for Order Terminating the Deposition of Kern County Sheriff Deputy John Swearengin (Doc. 62) is DENIED.

It is further ORDERED that Plaintiffs are permitted to continue the deposition of Deputy Swearengin for no longer than thirty (30) minutes. The area of inquiry will be restricted to Deputy Swearengin's 2016 training relating to driving while "Code 3." If Plaintiffs exceed this area of inquiry, the County may suspend the deposition to move for a protective order pursuant to Fed. R. Civ. P 30(d)(3). If the motion is granted, the deposition will be terminated and Plaintiffs will be subject to sanctions pursuant to Fed .R. Civ. P. 30(d)(2).

IT IS SO ORDERED.

Dated:   **December 5, 2016**              /s/ *Sheila K. Oberto*
                                             UNITED STATES MAGISTRATE JUDGE